UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

======================================

EAST AMHERST PLUMBING, INC.,

Plaintiff,

**DECISION AND ORDER**
12-CV-0195A

v.

KEVIN THOMPSON,
FRANCIS BENWAY, and
MICHAEL BRAMHALL,

Defendants.

======================================

## I. INTRODUCTION

Plaintiff East Amherst Plumbing, Inc. ("EAPI"), commenced the instant action against Defendants Michael Bramhall ("Bramhall"), an employee of Liberty Mutual Insurance Company, Francis Benway ("Benway"), an employee of Vertex Construction Services and agent of Liberty Mutual (collectively, the "Liberty Defendants"), and Kevin Thompson ("Thompson"), Director of Facilities at the State University of New York, University at Buffalo ("SUNY"), alleging various violations of its constitutional rights and state torts arising out of an incomplete construction project at SUNY, on which EAPI performed plumbing work as a subcontractor.

Currently before the Court are the Defendants' motions to dismiss (Docket Nos. 20, 21). EAPI has opposed the Defendants' motions (Docket Nos. 27, 28).

The Court finds oral argument on these motions unnecessary, and, for the reasons that follow, Thompson's and the Liberty Defendants' motions to dismiss are granted, and EAPI's amended complaint is dismissed in its entirety.

## II. BACKGROUND

The facts set forth herein reflect the allegations in EAPI's amended complaint. All well-pleaded allegations are accepted as true for purposes of this motion to dismiss, and do not constitute the findings of the Court. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

On or about February 10, 2010, SUNY entered into a renovation contract with Patrick Development, Inc. ("General Contractor"), entitled "Farber 3rd and 4th Floor Renovations/School of Medicine & Biomedical Sciences - UB Academic Health Center/Behling Simulation Center," referred to herein as the "Prime Contract." Under the Prime Contract, the amount to be paid to the General Contractor was $7,103,000.00.

Liberty Mutual Insurance Company ("Liberty Mutual") as surety, and the General Contractor, as principal, executed a labor and material bond relative to the Prime Contract under which Liberty Mutual and the General Contractor bound themselves to SUNY, guaranteeing prompt payment of monies due all persons furnishing the General Contractor or any subcontractor thereof, with labor or materials in the prosecution of work provided in the Prime Contract.

Liberty Mutual and the General Contractor executed a performance bond

-2-

relative to the Prime Contract, under which Liberty Mutual and the General Contractor bound themselves to SUNY for the satisfactory completion of the project.

Under the Prime Contract, the General Contractor was responsible for, *inter alia*, the furnishing and installation of plumbing on the project pursuant to certain plans and specifications.

On or about March 25, 2010, the General Contractor entered into a contract with EAPI ("the Subcontract"), pursuant to which EAPI would furnish and install heating and plumbing pipes, valves, fixtures, and accessories in accordance with the terms of the Prime Contract. The amount to be paid to EAPI under the Subcontract was $299,696.00. The Prime Contract was expressly incorporated by reference and made part of the Subcontract.

The General Contractor entered into similar contracts with a number of subcontractors for purposes of carrying out the scope of work under the Prime Contract. EAPI is only one of two subcontractors engaged by the General Contractor on the project that is non-union–the other is Nabali, LLC, an electrical subcontractor who has also been treated discriminatorily by the Defendants in this action.

Ultimately, SUNY terminated the Prime Contract with the General Contractor. The project, though incomplete, was closed down and all subcontractors were instructed to cease work and vacate the project site. SUNY put Liberty Mutual, as surety, on notice of the termination of the Prime Contract. At the time of termination, the amount of $198,806.67 was due and owing to EAPI for the work it had carried

-3-

out on the project.

Thompson and/or Liberty Mutual retained Vertex, Benway's employer, to assist in the completion of the project pursuant to the requirements of the Performance Bond.

On December 21, 2011, EAPI was provided with a Subcontractor Ratification Agreement for execution, which recited that the General Contractor had defaulted on the Prime Contract and that SUNY had demanded that Liberty Mutual arrange for completion of the Prime Contract. The Subcontractor Ratification Agreement, which was to be signed by Bramhall, also stated that Liberty Mutual had taken over completion of the Prime Contract. The agreement recited that $79,151.56 was due and owing to EAPI which would be paid upon execution of the agreement. The agreement further recited that EAPI would be retained to continue as a subcontractor on the project upon its execution. See Am. Compl. (Docket No. 16), Ex. A.

The proposed Subcontractor Ratification Agreement did not, however, reflect the true amount owed to EAPI as it omitted a number of change orders which had been approved but not fully processed. Thus, communications ensued between EAPI and Benway to correct the amounts set forth in the agreement and to include language that would acknowledge EAPI's right to payment for the additional change orders prior to its execution of the agreement. Certain statements made by Benway and Bramhall, with regard to EAPI, were false. Contrary to Benway and Bramhall's

assertion that Liberty Mutual had taken over completion of the Prime Contract, it was in fact SUNY that had taken over and undertaken work on the project. SUNY had not reached an agreement with Liberty Mutual whereby Liberty Mutual would complete the Prime Contract.

Benway, Bramhall, and Thompson carried out an inspection of the project, which included the work completed by EAPI. The three Defendants falsely and maliciously alleged that the work carried out by EAPI was defective and that EAPI was not entitled to any payment for the work completed to date nor was EAPI permitted to complete its work. Specifically, the Defendants claimed that there were numerous gas leaks from the gas lines installed by EAPI. EAPI contends that these claims were false because the lines had previously been inspected, tested, and the work approved by SUNY. EAPI was never informed that its work was alleged to be defective and/or unsafe beforehand. Further, EAPI was never provided with a final punch list, an opportunity to inspect the allegedly defective work prior to the remediation, or an opportunity to cure the alleged defects. Other subcontractors on the project that are unionized, such as Clarence Wall, Amsco, Allied Fire, CBO Glass, and Siemens, were not subject to false allegations of deficient work.

Thompson, acting under color of State Law, and in his capacity as an employee of New York State, instructed Liberty Mutual to refrain from using EAPI as a subcontractor for the completion of the project, contrary to the terms of the Subcontractor Ratification Agreement. As a result, Liberty Mutual and/or SUNY

refused payments to EAPI totaling $198,806.67 that is owed as set forth in a public improvement lien.

Liberty Mutual, acting in concert with Thompson and Benway, and at their direction, rescinded the Subcontractor Ratification Agreement and is not prepared to pay the amount of $79,151.56, which Vertex, its agent, admitted is due and owing to EAPI.

Liberty Mutual was not provided with any documentation supporting the allegation that EAPI's work was defective and/or unsafe, or that would otherwise support the refusal of payment to EAPI prior to Thompson's instruction that Liberty Mutual refrain from using EAPI as a subcontractor for completion of the project. Liberty Mutual and Vertex also failed to undertake a timely and proper investigation into the right of EAPI to payment for the work it carried out under the subcontract. The Defendants' collective actions reflect a malicious intent to undermine and sabotage EAPI's performance under Subcontract and its right to be paid for work it completed.

In summary, the amended complaint alleges that Thompson acted with improper and discriminatory motivations, and his actions were taken in order to deny monies due and owing to EAPI with the ultimate goal of causing great losses to EAPI in connection with the project and ultimately to deter non-union contractors from bidding on (and be awarded) public works contracts at SUNY. Moreover, the Liberty Defendants, acting under color of State Law, conspired with and acted in concert

with Thompson to further the illegal goal of harming non-union contractors in violation of the First Amendment and Fourteenth Amendments to the United States Constitution, Article 1, Section 11 of the New York State Constitution, and other common law duties.

## III. DISCUSSION

### Motion to Dismiss Standard

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005). A complaint should be dismissed only if it fails to contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In considering a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2011).

### 42 U.S.C. § 1983

EAPI brings this action pursuant to 42 U.S.C. § 1983 alleging various constitutional violations. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . causes to be subjected, any citizen of the United States . . . to the

-7-

> deprivation of any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable to the injured
> party in an action at law.

"To state a claim under § 1983, a plaintiff must allege that (1) the challenged

conduct was attributable at least in part to a person who was acting under color of

state law and (2) the conduct deprived the plaintiff of a right guaranteed under the

Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

## Equal Protection

In the first count of the amended complaint, EAPI presses a class-of-one

equal protection claim, alleging that it was treated disparately by the Defendants with

no rational basis.[1] Am. Compl. ¶¶ 60-71. The Defendants move to dismiss this count

on the grounds that a class-of-one claim is unavailable to government contractors

and that EAPI has not offered any similarly-situated comparators. Liberty Def. Mem.

(Docket No. 20) at 8-9; Thompson Mem. (Docket No. 21) at 5-10.

To advance a successful equal protection claim under a class-of-one theory,

a plaintiff must show that he "has been intentionally treated differently from others

similarly situated and that there is no rational basis for the difference in treatment."

*Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Specifically, class-of-one

claims must satisfy two elements: "that: (i) no rational person could regard the

---

[1] Although EAPI states in its amended complaint that it was treated differently because it was a non-union shop, it is well-settled that union membership does not constitute a protected class for purposes of equal protection analysis, see *Lyng v. Int'l Union,* 485 U.S. 360 (1988), nor does non-union status. *Hoke Co. v. Tenn. Valley Auth.*, 854 F.2d 820, 828 (6th Cir.1988). The Court thus construes EAPI's equal protection claim as brought under a class-of-one theory.

-8-

circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (internal block quoting and citations omitted). These two elements, when pled early in a case or proven at trial, emphasize that what makes a class-of-one equal protection violation offensive "is not simply the act of singling out, but rather that the singling out is done in such an arbitrary way." *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 547 (7th Cir. 2008) (citation omitted).

As a threshold matter, the Court must address the applicability of *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008), which eliminated class-of-one claims for government employees, holding that such a claim is unavailable as a matter of law when the government makes discretionary decisions concerning government employment. 553 U.S. at 606–07. This Court, as well as others in this Circuit, have held that the rule set forth in *Engquist* extends to the government-contractor relationship. *See NRP Holdings LLC v. City of Buffalo*, No. 11–CV–472, 2012 WL 2873899 (W.D.N.Y. July 12, 2012) (holding that city's decision to withdraw from a subsidized housing project with development corporation was a discretionary employment act precluding equal protection claim); *Heusser v. Hale*, 777 F.Supp.2d 366, 383-85, n. 31 (D.Conn. 2011) (towing company contracted by city deemed to

be city's public employee, and thus, company's allegations that city engaged in arbitrary personnel action in terminating its employment by removing it from city's rotational towing list and failing to reinstate company to list, were not cognizable "class of one" equal protection claims; "[E]ven if the Plaintiffs were characterized as 'government contractors,' rather than 'public employees,' *Engquist* would still apply to bar their claims.") (citing *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1274 (11th Cir. 2008)); *Seymour's Boatyard, Inc. v. Town of Huntington*, No. 08-CV-3248, 2009 WL 1514610 (E.D.N.Y. June 1, 2009) (equal protection class-of-one claim is not cognizable in the government contractor context where the challenged decision is a discretionary one); *JAV Auto Center, Inc. v. Behrens*, No. 05 CIV. 6503, 2008 WL 9392107 (S.D.N.Y. Oct. 8, 2008) ("If Plaintiffs were independent contractors providing services to the Authority, *Engquist* would, in my view, plainly apply, because public agencies have the same need for flexibility and discretion in dealing with their contractors as they do with their employees.")

Here, the Liberty Defendants, as SUNY's agents, in administering a construction contract and ultimately rescinding the Subcontractor Ratification Agreement, were acting in a discretionary, decision-making manner—exactly the type of action *Engquist* held to be not cognizable in a class-of-one, equal protection context. Because it is by now well-settled that "federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies," *Engquist*, 553 U.S. at 609 (quoting *Bishop v. Wood*, 426 U.S. 341,

-10-

349 (1976), EAPI's class-of-one claim is barred and Count I of the amended complaint is dismissed.

**Procedural Due Process**

EAPI alleges that Thompson violated its constitutional due process rights by "taking steps to deprive EAPI of its liberty and property interests without any notice or due process." Am. Compl. ¶ 73. Thompson argues that EAPI has failed to articulate a protected property interest and that a contract dispute does not state a constitutional claim. Thompson Mem. at 10-12.

Procedural due process requirements are generally satisfied by appropriate notice and an opportunity to be heard. *Natale v. Town of Ridgefield,* 170 F.3d 258, 262 (2d. Cir. 1999). In order to state a due process violation claim, a plaintiff must first show the deprivation of a constitutionally protected liberty or property interest by the state. *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1061–62 (2d. Cir. 1993). Notably, EAPI does not articulate a constitutionally-protected property interest in the amended complaint. *See* Am. Compl. ¶ 73. Assuming that EAPI seeks to allege that its earned payments constitute a sufficient property interest upon which to base a due process claim, the Second Circuit has avoided extending procedural due process protections to property interests such as those alleged here, *e.g.,* the right to continuation of or to payment under a commercial contract. *See Martz v. Incorp. Vill. of Valley Stream,* 22 F.3d 26, 31 (2d Cir. 1994) ("Whenever a person contracts with a state, breach by the state can be considered a denial of his

-11-

entitlement to performance of the contract. If the concept of 'entitlement' were this expansive, federal courts could be asked to examine the procedural fairness of every action by a state alleged to be in breach of its contracts."); *S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 966 (2d Cir. 1988) ("An interest in enforcement of an ordinary commercial contract with a state is qualitatively different from the interests the Supreme Court has thus far viewed as 'property' entitled to procedural due process protection."); *Walentas v. Lipper*, 862 F.2d 414, 418 (2d Cir. 1988) (contract dispute, in and of itself, is insufficient to give rise to cause of action under section 1983); *accord Ganci v. New York City Transit Auth.*, 420 F.Supp.2d 190, 202 (S.D.N.Y. 2005) (routine commercial contracts do not give rise to protected property interests); *Seymour's Boatyard, Inc.*, 2009 WL 1514610, at *5 (contractor lacked a property interest in a license that was awarded and later rescinded by town to operate a launch and mooring service).[2]

Furthermore, property interests protected by due process are neither created nor defined by the Constitution. *See Martz*, 22 F.3d at 31. "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972). In order for a person

---

[2] The cases cited by EAPI are either inapposite or unpersuasive. For example, *Phillips v. Egan*, No. 99 CV 961 , 2000 WL 436693, at *3 (D. Conn. Feb. 22, 2000), involved a fee-splitting agreement between the state and local sheriff's offices, and not a commercial contract.

to have a property interest in a benefit such as the right to collect payment under a contract, "he must have more than a unilateral expectation of it. He must instead have a legitimate claim of entitlement to it." *Id.*

EAPI claims a property interest in the unpaid monies, but cites to no state law or contractual source creating an entitlement to the benefits of a contract with the State. Thus, EAPI does not allege any "clear entitlement" to the right to continue performing work on the Project or to receive payment by the Defendants. EAPI's "property interest" claim is at most a breach of contract claim, which is appropriately adjudicated under relevant New York law. *See S & D Maint.*, 844 F.2d at 968 (finding that "S & D's remedy, if it exists at all, lies in state court for breach of contract").

Accordingly, EAPI's allegations as set forth in Count II of the amended complaint do not state a claim of a constitutional dimension, and the due process claim in Count II is dismissed.

**First Amendment**

Count III of the amended complaint sets forth an alleged violation of EAPI's First Amendment rights against Thompson when he took "actions to deprive EAPI of payment due and the right to continue working on the Project to punish it and its employees for their decision to associate with a non-union shop." Am. Compl. ¶ 75. Thompson, in turn, moves to dismiss on the grounds that EAPI lacks standing to assert such a claim, that there is no actionable interference with associational rights, and that the alleged rational basis also defeats the freedom of association counts.

-13-

Thompson Mem. at 12-14.

Even assuming EAPI has standing to assert First Amendment claims on behalf of itself and its employees' associational rights, EAPI does not allege that Thompson's conduct "directly and substantially interfered" with its ability to remain non-union.

"[I]mplicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). To state a claim for violation of freedom of association under the First Amendment, "the interference with associational rights must be 'direct and substantial' or 'significant.'" *Fighting Finest v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996) (interpreting and quoting *Lyng v. Int'l Union*, 485 U.S. 360, 367 & n. 5, (1988)). In *Fighting Finest*, 95 F.3d at 228, the Second Circuit Court of Appeals held that the NYPD's decision not to recognize a boxing organization of NYPD members, and thus not to allow the organization to post notices on police premises, constituted neither a direct, substantial, nor significant interference with associational rights. *Id.* In this regard, the Second Circuit noted that plaintiff did not allege that the actions of the NYPD had caused its members to suspend or even curtail their associational activities. *Id.*

In *Lyng*, the Supreme Court found that despite the fundamental right to organize into unions, a law denying food stamps to striking workers—even though

-14-

"[s]trikers and their union would be much better off if food stamps were available"–"ha[d] no substantial impact on any fundamental interest" and therefore warranted only rational basis review. *Lyng*, 485 U.S. at 366-68, 370 (noting that the law "does not 'order' appellees not to associate together . . . and it does not 'prevent' them from associating together") (citing *Lyng v. Castillo*, 477 U.S. 635, 638, 106 (1986))).

The Eighth Circuit applied the reasoning in *Lyng* to the context of a governmental preference for union labor in the construction industry. In *Hanten v. School Dist. of Riverview Gardens*, 183 F.3d 799 (8th Cir.1999), a non-union heating and air conditioning subcontractor, three of its employees, and a taxpayer sued a school district, its superintendent, and individual board members, alleging that they unlawfully prohibited subcontractor and the employees from working on a school building project. In affirming the district court's decision, the Eighth Circuit held, *inter alia*, that the school district's preference for union labor, expressed in construction bid specifications, did not violate the constitutional right of non-union employees to freely associate, and that the subcontractor had no property right in the contract, as required to support its due process claim. *Hanten*, 183 F.3d at 806-07. ("We emphasize that the complaint fails to allege in nonconclusory terms that the union preference is likely to "directly or substantially interfere" with the rights of K.C. employees. For example, there is no claim that such a preference is likely to coerce these employees to join a union. There is no claim that there was a shortage of

work. There is no claim that any of the employees lost wages or were likely to suffer wage losses as a result of the preference. Moreover, there is no claim that a union preference would likely cause the employees to quit working for K.C. There is not even an assertion that the K.C. employees would do something as a result of the preference that they would not have done had there been no preference. As a result, we find it 'exceedingly unlikely' that the preference would prevent K.C. employees from exercising their right not to join a union.")

The Sixth Circuit reached a similar conclusion in *Hoke Co., Inc. v. Tenn. Valley Auth.*, 854 F.2d 820, 828 (6th Cir. 1988), which held that the decision of the Tennessee Valley Authority not to award a contract for purchase of coal to a non-union contractor was not shown to be likely to compel the contractor's employees to forgo their right not to associate in a union, even though contract was awarded to a union contractor, which offered the coal at a lower price. ("Applying the analysis of *Lyng v. UAW* to this case, we find that TVA did not directly and substantially interfere with the Hoke employees' ability not to associate in a union . . . .") (internal quotation marks omitted).

The Court finds this line of cases relevant to the instant analysis. Here, EAPI alleges that Thompson, a government actor, allegedly took action to further his preference for union labor. However EAPI does not plead any actual interference with the non-union workers' ability to remain non-union, or its own ability to employ non-union workers, and Thompson's decision does not "require an exaction from any

-16-

individual, coerce any belief, or require . . . employees to become unionized." *Hoke*, 854 F.2d at 828.[3]

In summary, assuming the truth of EAPI's allegations, the fact that Thompson withheld payment and precluded further work by EAPI on the SUNY project does not constitute a direct and substantial interference with its employees' ability to remain non-union, and cannot violate the non-party employees' associational rights as a matter of law. *Lyng*, 485 U.S. at 367 (concluding that a burden is merely incidental when it is "exceedingly unlikely" that a defendant's actions would prevent someone from exercising his or her associational rights) (internal quotation marks omitted). Accordingly, Count III of the amended complaint alleging a First Amendment violation of EAPI's freedom to associate must be dismissed.

Because the Federal claims in Counts I, II, and III have been dismissed for failure to state a claim, the Court can decline to exercise its supplemental jurisdiction over the remaining state tort claims. *See* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction"); *see Campbell v. Austin Air Sys. Ltd.*, 423 F.Supp.2d 61, 72-73 (W.D.N.Y. 2005). In any event, the remaining Counts of the amended complaint alleging state torts also fail to state claims upon

---

[3] Further, EAPI's First Amendment claim, subject to rational basis review, fails under well-settled Second Circuit precedent holding that a city policy requiring city contractors to employ union labor had a rational basis and therefore did not constitute a denial of equal protection or due process. *See Image Carrier Corp. v. Beame*, 567 F.2d 1197 (2d Cir. 1977).

which relief can be granted as briefly discussed below.

**Trade Defamation**

Count IV of the amended complaint purports to state a claim for "trade defamation" against all Defendants on the basis that "Defendants intentionally or negligently impugned the integrity and competence of EAPI by falsely stating and publishing to third parties (including Liberty Mutual) that EAPI performed work improperly and incompetently. As a direct and proximate cause of Defendants' tortious conduct, EAPI has suffered economic damages and reputational harm." Am. Compl. ¶¶ 78-79.[4] Both Thompson and the Liberty Defendants argue that EAPI has failed to plead the essential elements of a claim for trade defamation and/or defamation *per se*. Thompson Mem. at 17-19; Liberty Mem. at 24-25.

Under New York law, the elements of a defamation claim are: (1) a defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party, (4) that is false, (5) made with the applicable level of fault, (6) causing injury, and (7) not protected by privilege. *See Dillon v. City of New York*, 261 A.D.2d 34, 38, 704 N.Y.S.2d 1 (1st Dep't 1999) (citing Restatement (Second) of Torts § 558). Where a

---

[4] The Court reads EAPI's trade defamation claim as one for defamation *per se*, on the basis that EAPI did not plead special damages as required by New York law. *See Sandler v. Simoes*, 609 F.Supp.2d 293, 302 (E.D.N.Y. 2009) ("A party alleging trade libel must establish that the communication was a substantial factor in inducing others not to conduct business with it and, unlike libel *per se*, must adduce proof of special damages in the form of lost dealings."); *see also Jin Yung Chung v. Sano*, No. 10-cv-2301, 2011 WL 1298891, at *6 (E.D.N.Y. Mar. 31, 2011) (The result of the communication must be that 'special damages, in the form of lost dealings, are incurred,' and '[i]n pleading special damages, actual losses must be identified and causally related to the alleged tortuous act.'") (citing *Waste Distillation Tech. v. Blasland & Bouck Engs., P.C.*, 136 A.D.2d 633, 634 (2d Dep't 1988)).

-18-

statement impugns "the basic integrity" of a business, an action for defamation *per se* lies, and general damages are presumed. *See Ruder & Finn Inc. v. Seaboard Surety Co.*, 52 N.Y.2d 663, 670 (1981).

Defamation claims are governed by the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure. *See Geisler v. Petrocelli*, 616 F.2d 636 (2d Cir. 1983). Under Rule 8, a complaint "need not specifically plead the alleged defamatory words; rather, the pleading party need only provide the opposing party with 'sufficient notice of the communications complained of to enable him to defend himself.'" *Unique Sports Generation, Inc. v. LGH-III, LLC*, No. 03 Civ. 8324, 2005 WL 2414452, at *9 (S.D.N.Y. Sep. 30, 2005) (quoting *Treppel v. Biovail Corp.*, No. 03 Civ. 3002, 2005 WL 2086339, at *8 (S.D.N.Y. Aug. 30, 2005)). However, mere conclusory statements that the plaintiff was disparaged by false statements are insufficient to state a defamation claim. *See Lee v. Bankers Trust Co.*, 96 Civ. 8153, 1998 WL 107119 at *3 (S.D.N.Y. Mar.11, 1998) ("Plaintiff's vague conclusory allegations, without more, are insufficient to state a claim for defamation."), *aff'd*, 166 F.3d 540 (2d Cir. 1999); *see also Reilly v. Natwest Markets Grp., Inc.*, 181 F.3d 253, 271 (2d Cir. 1999).

EAPI's pleading is deficient on a multitude of grounds. It does not allege what the defamatory statements were and does not allege a publication. There is no specific reference to whom the allegedly false statements were made (other than

among the Defendants themselves) or by what means they were published.[5] Here, the amended complaint does not put forth any *nonconclusory* factual allegations regarding the publication of such defamatory statements to third parties, it only states that the Defendants made false allegations regarding the quality of EAPI's workmanship. This is insufficient. *Compare In Touch Concepts, Inc. v. Cellco P'ship*, --- F.Supp.2d ----, 2013 WL 2455923, at *30 (S.D.N.Y. 2013) (dismissing amended complaint where it alleged that defendant "falsely stated, repeatedly and publicly, that . . ." but failed to put forth any nonconclusory factual allegations regarding the publication of such defamatory statements to third parties), *with Pasqualini v. MortgageIT, Inc.*, 498 F.Supp.2d 659 (S.D.N.Y. 2007) (amended complaint survived 12(b)(6) dismissal where it alleged, *inter alia*, that defendant "circulated an e-mail regarding plaintiff's termination . . . describ[ing] plaintiff as disloyal and incompetent" and e-mail "was distributed to numerous individuals," including a named prospective employer).

The Court agrees with the Defendants that EAPI has failed to state a plausible claim of defamation, and Count IV of the amended complaint must be dismissed.

**Tortious Interference with Contract and Business Relations**

Counts V and VI of the amended complaint allege claims of tortious interference with contract and tortious interference with business relations,

---

[5] The only possible "publication" was to Liberty Mutual, but its agent Benway and employee Bramhall are the same defendants who allegedly made the defamatory statements. Am. Compl. ¶ 78.

respectively. Am. Compl. ¶¶ 82-90. EAPI has withdrawn Count V, see EAPI Opp'n.

(Docket No. 28) at 1, therefore the Court will only address Count VI, which fails to

state a claim upon which relief can be granted. Am. Compl. ¶¶ 89-90.

> To state a claim for this tort under New York law, four
> conditions must be met: (1) the plaintiff had business
> relations with a third party; (2) the defendant interfered
> with those business relations; (3) the defendant acted for
> a wrongful purpose or used dishonest, unfair, or improper
> means; and (4) the defendant's acts injured the
> relationship.

Catskill Dev. L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008).

EAPI appears to allege that Thompson interfered with prospective business

relations between EAPI and Liberty Mutual, the surety on the construction project,

through his statements concerning EAPI's defective work. Yet the same conduct,

i.e., making false allegations regarding EAPI's work product, is also alleged against

the Liberty Mutual Defendants. See Am. Compl. ¶ 78. Since, according to EAPI,

Liberty Mutual is alleged to have "acted in concert with Thompson and Benway" to

"arbitrarily and maliciously . . . cause harm to EAPI," see Am. Compl. ¶ 47, any

alleged loss of business cannot be plausibly attributed to Thompson. See

Knight-McConnell v. Cummins, No. 03 Civ. 5035, 2004 WL 1713824, at *4 (S.D.N.Y.

July 29, 2004) (to plead tortious interference with prospective economic relations,

a plaintiff must allege that plaintiff would have entered into an economic relationship

but for the defendant's wrongful conduct, and name the parties to any specific

contract [he] would have obtained.") (internal quotations omitted).

-21-

The exhibits attached to the Amended Complaint indicate that the Subcontractor Ratification Agreement was not offered by Liberty Mutual, but was offered by a company called Vertex; the offer was rejected by both EAPI's counteroffer and it was expressly contingent on Liberty Mutual's approval. Am. Compl. ¶¶ 29-34 & Ex. A. Liberty Mutual's approval was simply not a plausible contingency in light of the allegation that Liberty's agent and employee had already made statements concerning EAPI's defective performance on the project, see Am. Compl. ¶ 78, and the additional allegation that Liberty Mutual itself, as an entity, "arbitrarily and maliciously acted to cause harm to EAPI." Am. Compl. ¶ 47. These allegations of shared conduct with respect to the statements regarding EAPI's work performance precludes any plausibility that Thompson's actions were the "but for" cause of EAPI's loss of prospective business. See Parrott v. Logos Capital Mgmt., LLC, 91 A.D.3d 488, 483 (1st Dep't 2012).

As stated above, EAPI has made similar allegations against all Defendants in support of its claim for trade defamation, stating that "Defendants intentionally or negligently inpugned the integrity and competence of EAPI by falsely stating and publishing to third parties . . . that EAPI performed improperly and incompetently." Am. Compl. ¶ 78. While the Court is mindful of the liberal inconsistent pleading standard of Rule 8(d)(3), it "cannot be construed as an invitation to incoherent, self-contradictory pleadings." In re Livent, Inc. Noteholders Sec. Litig., 151 F.Supp.2d 371, 406 (S.D.N.Y. 2001). The factual assertions "must be sufficient to

state all the requisite elements of a given theory of liability," even if they are insufficient to support a different theory. *Livent,* 151 F.Supp.2d at 407. "That is not to say, however, that Rule 8(e) grants plaintiffs license to plead inconsistent assertions of facts within the allegations that serve as the factual predicates for an independent, unitary claim." *Id.* That, however, is exactly what EAPI has done here.

EAPI's claim for tortious interference with prospective business relations is ill-fitting and inapplicable to the facts alleged. Count VI is therefore dismissed.

**Qualified Immunity**

Because the Court concludes that EAPI has not stated any federal constitutional claims, it need not address Thompson's assertion of qualified immunity. *See* Thompson Mem. at 22.

## IV. CONCLUSION

For all of the foregoing reasons, the Court:

(1)    Grants the Liberty Defendants' Motion to Dismiss (Docket No. 20);

(2)    Grants Defendant Thompson's Motion to Dismiss (Docket No. 21);

The Clerk of the Court shall close this case.

SO ORDERED.

HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: September 2 7, 2013

-23-